In re Richard D. OLSON &
Jean Olson, Debtors.

Richard D. OLSON & Jean
Olson, Plaintiffs,

v.

UNITED STATES of America acting
Through the DEPARTMENT OF TREA-
SURY and the Internal Revenue Service
& the State of North Dakota acting
through the North Dakota Tax Depart-
ment, Defendants.

Bankruptcy No. 93–30725.
Adv. No. 93–7063.

United States Bankruptcy Court,
D. North Dakota.

April 7, 1994.

James J. Coles, Bismarck, ND, for plaintiffs.

Thomas V. Linguanti, Washington, DC, for USA/IRS.

Donnita A. Wald, Bismarck, ND, for State of ND.

## MEMORANDUM & ORDER

WILLIAM A. HILL, Bankruptcy Judge.

The matter before the court is a Motion for Partial Summary Judgment filed on February 28, 1994, by the defendant, United States of America, acting through the Department of Treasury and the Internal Revenue Service arising from the Complaint filed by the plaintiffs, Richard D. Olson and Jean Olson, on August 30, 1993, to determine the dischargeability of certain pre-petition tax obligations. The motion of the United States essentially alleges that the material facts and issues relative to a finding of nondischargeability under 11 U.S.C. § 523(a)(1)(C) have been previously established with respect to a number of pre-petition tax obligations via a consent judgment entered by the United States Tax Court on June 9, 1988. Specifically, the United States avers that the issue of "fraud" should be given preclusive effect under collateral estoppel principals in this adversary proceeding.

## FACTUAL BACKGROUND

The affidavits and documents filed by the United States in support of its motion and by the plaintiffs in opposition, establish the relevant facts. The debtor, Richard Olson (Olson), was licensed realtor specializing in the

sale of single family dwellings. In 1978, Olson entered into a joint venture with Kent Johanneson (Johanneson) who was an attorney experienced in property matters. The joint venture was undertaken for the purpose of acquiring and selling "mineral properties" at a time when oil and gas activity in North Dakota was escalating. The business venture came to its conclusion in 1981 with sale of the remaining properties acquired by Olson and Johanneson.

In June of 1987, the Commissioner of the Internal Revenue Service (I.R.S.) assessed income tax deficiencies against the plaintiffs for the tax years of 1977–82 inclusive, and issued a statutory notice of deficiency. The I.R.S. further assessed penalties against the plaintiffs for fraudulently under-reporting their income pursuant to I.R.C. § 6653(b) for the tax years 1977–81 inclusive.[1] The foregoing assessments were made primarily in connection with income and expenses associated with the purchase and sale of mineral properties.

The plaintiffs, who were represented by counsel, petitioned the United States Tax Court for a redetermination of the deficiency and penalty assessments in September of 1987. The plaintiffs challenged both the validity of the deficiency assessments and the assessment of the fraud penalties. The plaintiffs, in their petition, and the I.R.S., in its answer, detailed the grounds for their respective positions.

For reasons which are not altogether clear to the court, the parties entered into a compromise agreement which apparently provided for the full payment of the deficiency assessments for the years in question and a substantial reduction in the penalty assessment under I.R.C. § 6653(b).[2] As such, an evidentiary hearing on the issues was never held. That compromise agreement was adopted by the United States Tax Court and a consent judgment was entered accordance with its terms. The decision of the United States Tax Court provides in part:

Pursuant to the agreement of the parties in this case, it is

ORDERED AND DECIDED: That there are deficiencies in income taxes due from the petitioners for the taxable years 1977, 1978, 1979, 1980, 1981 and 1982 in the amounts of $5,960.00, $91,026.00, $31,258.00, $6,638.00, $7,386.00 and $273.00, respectively;

That there are additions to the tax due from petitioner Richard D. Olson for the taxable years 1977, 1978, 1979, 1980 and 1981, under the provisions of I.R.C. § 6653(b), in the amounts of $1,192.00, $18,205.00, $6,252.00, $1,328.00 and $1,477.00, respectively; and

That there are no additions to the tax under I.R.C. § 6653(b) due from petitioner Jean Olson for the taxable years 1977, 1978, 1979, 1980 and 1981....

(Government Exhibit 4, at 1). The compromise agreement which is attached to the Tax Court decision was signed by the plaintiffs' counsel and an I.R.S. representative. The stipulated agreement provides in pertinent:

---

1. I.R.C. § 6653(b), which can now be found at I.R.C. § 6663(b) due to an amendment, provides:

 If the Secretary establishes that any portion of an underpayment is attributable to fraud, the entire payment shall be treated as attributable to fraud, except with respect to any portion of the underpayment which the taxpayer establishes (by a preponderance of the evidence) is not attributable to fraud.

 I.R.C. 6663(b) (1993). Interestingly, it is I.R.C. § 7201, the criminal penalty, which substantially parrots one of the basis for nondischargeability under 523(a)(1)(C): "Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof...." I.R.C. § 7201 (1993).

2. The penalty originally assessed under § 6653(b) was $71,203.00. (See Government Ex-

hibit 1, at 2). The penalty agreed to be paid under the compromise agreement of the parties was $28,454.00. (See Government Exhibit 4).

Olson has at all times emphatically maintained that he never filed any fraudulent tax returns nor knowingly or fraudulently under-paid or underreported his income taxes for the years in question. In his sworn affidavit Olson contends:

It was always my belief that our tax returns were properly prepared and filed in the proper form in accordance with the law. In addition, it was never my intention to admit to the fraudulent tax returns in settling my tax litigation with the Internal Revenue Service in Tax Court. Instead, I was simply buying my peace knowing that I no longer had the financial resources to continue this dispute with the Internal Revenue Service.

(Affidavit of Richard D. Olson).

It is stipulated that the Court may enter the foregoing decision. It is further stipulated that, effective upon the entry of the decision of the Court, petitioners waive the restriction contained in I.R.C. § 6213(a) prohibiting assessment and collection of the deficiencies in income tax and additions to the tax (plus statutory interest) until the decision of the Tax Court has become final.

It is further stipulated that any reduction in tax payments for the taxable years 1980, 1981 and 1982 due to the adjustment in earned income credit by reason of the above decision will be repaid by the petitioners upon notification by an Internal Revenue Service Center....

(Government Exhibit 4, at 2). For reasons which are not entirely clear to the court, the Debtors filed a petition for relief under Chapter 7 of the United States Bankruptcy Code on August 18, 1993.

Based upon the foregoing decision and compromise agreement, the United States essentially argues, *inter alia*, the issue of fraud was both in dispute in the Tax Court proceeding and essential to the Tax Court decision. Therefore, it is asserted, that the issue of fraud should be given preclusive effect and warrants the entry of summary judgment pursuant to Federal Rule 56 and 11 U.S.C. § 523(a)(1)(C). Olson retorts in part by emphatically denying the existence of any fraud or fraudulent intent and further counters by averring that neither the compromise agreement nor the decision of the Tax Court makes any reference to fraud or a willful attempt to evade the payment of taxes.

## CONCLUSIONS OF LAW

### 1.

Rule 56 of the Federal Rules of Civil Procedure governs the grants of summary judgment and is made applicable to bankruptcy proceedings by Bankruptcy Rule 7056. Under Rule 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issues as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The primary purpose for granting a summary judgment motion is to promptly dispose of actions and avoid unnecessary trials when no genuine issue of material fact exists. The summary judgment mechanism is thus not a disfavored procedural shortcut, but rather an integral component of the Federal Rules of Civil Procedure as a whole, which are fashioned to secure an inexpensive, speedy, and just determination of every case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986).

The initial burden is always squarely on the movant to establish the lack of any genuine issue of material fact, with the party opposing the motion to be given the full benefit of all favorable factual inferences. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Froholm v. Cox,* 934 F.2d 959, 961 (8th Cir.1991); *Simmons v. Diamond Shamrock Corp.,* 844 F.2d 517, 519 (8th Cir.1988); *Olson v. United States (In re Olson),* 154 B.R. 276, 279 (Bankr.D.N.D. 1993). The party opposing a motion for summary judgment may not, however, merely rely on the naked allegations or general denials contained in its pleadings or papers. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986); *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356 (opining that when the movant has carried the burden in the first instance under Rule 56, "the opponent must do more than simply show that there is some metaphysical doubt as to the material facts."). The express language of the Rule makes it incumbent upon the nonmoving party to come forward with specific facts which demonstrate the existence of a genuine issue for trial. Fed.R.Civ.P. 56(e). Moreover, the mere existence of some factual dispute will not overcome an otherwise properly supported summary judgment motion. *Anderson,* 477 U.S. at 247, 106 S.Ct. at 2509–10. There is no genuine issue of material fact if the record as a whole could not lead the trier of fact to find for the nonmoving party. *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356. "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted."

*Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2511 (citations omitted). However, summary judgment is inappropriate in those cases in which different ultimate inferences may be properly drawn. When considering the merits of a summary judgment motion, it is not the function of the court to weigh evidence and resolve the truth of the matter but to ascertain whether there exists a genuine issue for trial. *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510–11; *Olson v. United States (In re Olson* ), 154 B.R. 276, 279 (Bankr.D.N.D. 1993).

It is with the foregoing standard in mind coupled with a review of the pleadings, papers, and submitted exhibits that the court proceeds to resolve the issue raised by the parties.

2.

■ As the United States' Motion for Partial Summary Judgment is premised almost exclusively upon the prior consent judgment of the United States Tax Court and the doctrine of collateral estoppel (issue preclusion), this court will consider the consent judgment with the concomitant compromise agreement and facts surrounding its creation in light of the requirements for nondischargeability under 11 U.S.C. § 523(a)(1)(C). Summary judgment is an appropriate mechanism for deciding whether a prior determination by a court of competent jurisdiction should be given collateral estoppel effect in a nondischargeability action.

■ The burden of proving that the debtors' pre-petition tax liabilities are nondischargeable under § 523(a)(1)(C) is on the United States. *Olson v. United States (In re Olson* ), 154 B.R. 276, 280 (Bankr.D.N.D. 1993). The proper standard of proof placed upon the United States to establish nondischargeability under § 523(a)(1)(C) is the ordinary preponderance of the evidence standard. *Grogan v. Garner,* 498 U.S. 279, 283–91, 111 S.Ct. 654, 657–61, 112 L.Ed.2d 755 (1991). Section 523(a)(1)(C) sets forth the parameters in which certain tax obligations may not be discharged:

(a) A discharge under section 727 ... does not discharge an individual debtor from any debt—

(1) for a tax ...—

(C) with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax;

...

In order to satisfy its burden under the aforementioned section, the IRS must prove that the plaintiffs *either* made a fraudulent return *or* willfully attempted to evade tax liability. The obvious purpose of this provision "is to prevent the use of the Bankruptcy Code as part of [a] dishonest scheme to evade tax liability." 3 *Collier on Bankruptcy* ¶ 523.06, at 523–29 (15th ed. 1993).

■ Although prior judgments have no *res judicata* effect in dischargeability actions under § 523(a), the United States Supreme Court has acknowledged that the narrower doctrine of collateral estoppel (issue preclusion) indeed applies in discharge exception proceedings to bar the relitigation of factual or legal issues that were determined in a prior proceeding. *See Grogan v. Garner,* 498 U.S. 279, 284 & n. 11, 111 S.Ct. 654, 658 & n. 11, 112 L.Ed.2d 755 (1991); *Brown v. Felsen,* 442 U.S. 127, 139 n. 10, 99 S.Ct. 2205, 2213 n. 10, 60 L.Ed.2d 767 (1979). *See also Johnson v. Miera (In re Miera* ), 926 F.2d 741, 743 (8th Cir.1991); *Lovell v. Mixon,* 719 F.2d 1373, 1376 (8th Cir.1983); *Ashton v. Burke (In re Burke* ), 83 B.R. 716, 723 (Bankr. D.N.D.1988); *Sanford v. Hanson (In re Hanson* ), 45 B.R. 60, 62 (Bankr.D.N.D.1984). In the words of the United States Supreme Court in *Grogan:*

[A] bankruptcy court could properly give collateral estoppel effect to those *elements* of the claim that are *identical to the elements required for discharge and which were actually litigated and determined* in the prior action.

*Grogan,* 498 U.S. at 284, 111 S.Ct. at 658 (emphasis added). The use of collateral estoppel in dischargeability proceedings under § 523(a) is, however, subject to the caveat that it be applied with great care since bankruptcy courts are vested with the exclusive jurisdiction to determine the nondischargeability of debts. *United States v. Towe (In re Towe* ), 147 B.R. 545, 549 (Bankr.D.Mont. 1992). *See M & M Transmissions, Inc. v. Raynor (In re Raynor* ), 922 F.2d 1146, 1148 (4th Cir.1991) (ruling that "the determination that an issue was actually litigated and nec-

essary to the judgment must be made with particular care."); *McGee v. McCown (In re McCown )*, 129 B.R. 432, 437 (Bankr.D.Md. 1991). The federal policies underlying a bankruptcy discharge further buttress the view that the issues necessary for issue preclusion be addressed with particular caution. *Combs v. Richardson*, 838 F.2d 112, 116 (4th Cir.1988). *Cf. Brown v. Felsen*, 442 U.S. 127, 132, 99 S.Ct. 2205, 2210, 60 L.Ed.2d 767 (1979). Indeed, the policy considerations attendant a bankruptcy discharge weigh strongly in favor of nonpreclusion.

▮ The fundamental purpose of collateral estoppel is not to foreclose a party from putting forth contested factual issues before the court, but rather is intended to bar their submission twice. *City Stores Co. v. Mall, Inc. (In re City Stores Co.)*, 42 B.R 685, 688 (S.D.N.Y.1984). The United States Supreme Court has noted that "the whole premise of collateral estoppel is that once an issue has been resolved in a prior proceeding, there is no further fact finding function to be performed." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 336 n. 23, 99 S.Ct. 645, 654 n. 23, 58 L.Ed.2d 552 (1979). In light of the doctrine's purpose, it is clear that decisions of the United States Tax Court may be given preclusive effect in nondischargeability actions under § 523(a). *See, e.g., Lilley v. IRS (In re Lilley )*, 152 B.R. 715, 721 (Bankr. E.D.Pa.1993).

▮ It is well settled that under the doctrine of collateral estoppel, four elements must be clearly established in order for an issue to be given preclusive effect in a subsequent proceeding:

1. The issue sought to be precluded must be the same issue as that involved in the prior action;
2. The issue must have been actually litigated;
3. The issue must have been determined by a valid and final judgment; and
4. The determination of the issue must have been essential to the final judgment.

*Ashton v. Burke (In re Burke )*, 83 B.R. 716, 723 (Bankr.D.N.D.1988); *United States v. Vandrovec (In re Vandrovec )*, 61 B.R. 191, 196 (Bankr.D.N.D.1986). *See Johnson v. Mi-*

*era (In re Miera )*, 926 F.2d 741, 743 (8th Cir.1991). The party in a § 523(a) action premising its summary judgment motion upon the doctrine of collateral estoppel carries the additional burden of satisfying *all* four elements in order to prevail. *In re Miera*, 926 F.2d at 743.

▮ As the foregoing elements make abundantly clear, collateral estoppel applies to only those issues which have *actually* and necessarily been litigated and decided by a final judgment. *See Lovell v. Mixon*, 719 F.2d 1373, 1376 (8th Cir.1983). In order to ascertain whether the precise issue of fraud was actually litigated and necessary to the decision of the Tax Court, this court is compelled to examine the entire record of the earlier proceeding. *In re Miera*, 926 F.2d at 743. A court must generally look beyond the judgment. *Spilman v. Harley*, 656 F.2d 224, 228 (6th Cir.1981). However, this court has always maintained that in order for collateral estoppel to apply, the factual basis for the findings made by a previous tribunal must be "clear". *See Ashton v. Burke (In re Burke )*, 83 B.R. 716, 723 (Bankr.D.N.D.1988); *Skaarer v. Fercho (In re Fercho )*, 39 B.R. 764, 766 (Bankr.D.N.D.1984). The nature of this court's inquiry in determining whether the issue of fraud shall be precluded from litigation in this nondischargeability proceeding necessitates an examination of the consent judgment itself as well as the compromise agreement which formed the basis of the judgment. This inquiry is undertaken in order to ascertain whether the *factual* issues necessary to a finding of nondischargeability under § 523(a)(1)(C) were actually and necessarily resolved by the Tax Court.

The issue of whether the doctrine of collateral estoppel is applicable to consent judgments, default judgments and their ilk is an issue which is difficult for courts to grapple with and has not been resolved, even within this circuit, to any degree of absolute certainty. *Compare United States v. Bryant*, 15 F.3d 756, 758 (8th Cir.1994) (opining that the doctrine of *"res judicata"* barred the taxpayer from relitigating claims or defenses that could have been raised in tax court even though the Tax Court decision was based on an agreement between the parties); *Nour-*

bakhsh v. Gayden (In re Nourbakhsh), 162 B.R. 841, 846 (9th Cir. BAP 1994) (affirming the applicability of collateral estoppel to a default judgment in a nondischargeability action); Valcour Printing, Inc. v. Poole (In re Poole), 148 B.R. 49, 51 (Bankr.E.D.Mo.1992), with Gall v. South Branch Nat'l Bank, 783 F.2d 125, 127 (8th Cir.1986) (observing that the doctrines of res judicata and collateral estoppel are inapplicable when the issues sought to be precluded in a subsequent proceeding were determined by stipulation or a consent judgment); Spilman, 656 F.2d at 228 (noting that "[i]f important issues were not actually litigated in the prior proceeding, as is the case with a default judgment, then collateral estoppel does not bar relitigation in bankruptcy court."); Lamar v. Loevner (In re Loevner), 163 B.R. 764, 765–66 (Bankr. E.D.Va.1994) (ruling that the state court consent judgment was insufficient to support the application of the doctrine of collateral estoppel where the judgment contained no findings of fact); New York State Dept. of Social Servs. v. Perrin (In re Perrin), 55 B.R. 401, 402 (Bankr.D.N.D.1985) (refusing to give preclusive effect to a confessed judgment based upon a settlement stipulation); Kraft v. Hunter (In re Hunter), 17 B.R. 523, 526 (Bankr.W.D.Mo.1982) (opining that "collateral estoppel is inappropriate when the prior judgment was a consent judgment without any hearing or determination of the merits by the court itself."). See generally Katahn Assocs., Inc. v. Wien (In re Wien), 155 B.R. 479, 483–86 (Bankr.N.D.Ill.1993) (discussing the divergent views accorded the "actually litigated" requirement in the context of consent judgments and default judgments). The inherent problem with the applicability of collateral estoppel principles to consent judgments is that such judgments are perfunctorily entered as a reflection of the agreement of the parties and, therefore, differ substantially from a fully litigated judgment. Industrial Ins. Servs., Inc. v. Zick (In re Zick), 100 B.R. 867, 869 (Bankr.E.D.Mich.1989). Logic dictates that because nothing is "adjudicated" between parties to a consent judgment, the essential requirement of "actual litigation" necessary to issue preclusion cannot be satisfied since the very reason for entering into a consent judgment is to avoid litigation. Id. at 870. Consent judgments do not involve a decision or contest on the merits. The fact that a tribunal has not actually resolved or settled the substance of the issues presented by the parties is indeed the essential characteristic of a consent judgment. 18 Charles Alan Wright et al., Federal Practice & Procedure § 4443, at 383 (1981). Instead, the entered judgment emanates from essentially a contractual agreement between the parties.

 Given the essentially contractual nature of consent judgments, certain principles of contract law must be accorded deference when ascertaining whether a particular judgment will be accorded preclusive effect in another forum. As such, this court is of the view that consent judgments can have no preclusive effect in a nondischargeability proceeding to unlitigated issues unless the agreement which forms the basis of the judgment manifests such an intention. When a court is confronted with a consent judgment founded upon an agreement of the parties, the issue of "intention" then becomes the polestar for satisfying the defect inherent in fulfilling "actually litigated" requirement of collateral estoppel. Therefore, "[i]ssue preclusion does not attach unless it is clearly shown that the parties intended that the issue be foreclosed in other litigation." Id. at 382. Under such circumstances, either the consent decree or the agreement itself must contain ' "far-reaching preclusive language." ' In re GHR Energy Corp., 62 B.R. 226, 232 (Bankr.S.D.Tex.1986) (quoting Southern Pacific Comm. Co. v. A.T. & T., 740 F.2d 1011, 1011 (D.C.Cir.1984), cert. denied, 470 U.S. 1005, 105 S.Ct. 1359, 84 L.Ed.2d 380 (1985)). If the parties to a consent judgment "indicated clearly the intention that the decree to be entered shall not only terminate the litigation of claims but, also, determine finally certain issues, then their intention should be effectuated." Kaspar Wire Works, Inc. v. Leco Eng'g & Mach., Inc., 575 F.2d 530, 539 (5th Cir.1978). See Industrial Ins. Servs. v. Zick (In re Zick), 100 B.R. 867, 870 (Bankr. E.D.Mich.1989); Restatement (Second) of Judgments § 27 cmt. e (1982) ("In the case of a judgment entered by confession, consent, or default, none of the issues is actually

litigated. Therefore, ... collateral estoppel does not apply with respect to any issue in a subsequent action. The judgment may be conclusive, however, with respect to one or more issues, if the parties have entered an agreement manifesting such an intention."). It has been cogently reasoned that:

> Where the agreement upon which a consent judgment is based is fairly to be construed as providing that the parties should be bound collaterally upon a certain point, that agreement will ... be given effect. An intention to be bound in this way should not however be found unless the language or admissible evidence affirmatively points to it, and such an intention should not be inferred from the circumstance, taken alone, that the agreement or judgment contains a stipulation or recital of the fact's existence. Where the parties to a consent judgment have not agreed to be thus bound, the rules pertaining to the effect of judgments do not require that they should be....

*Id.* at 870 (quoting Professor James, *Consent Judgments as Collateral Estoppel,* 108 U.Pa. L.Rev. 173, 193 (1959)). "Justice, then, is probably better served if the principle of collateral estoppel does not apply to unlitigated issues underlying default or consent judgments, or to issues determined by the parties, unless it can be said that the parties could reasonably have foreseen the conclusive effect of their actions." 1B James WM. Moore et al., *Moore's Federal Practice* ¶ 0.444[1], at 794 (2d ed. 1993). *Accord Klingman v. Levinson,* 831 F.2d 1292, 1296 (7th Cir.1987); *Bicknell v. Stanley,* 118 B.R. 652, 661 (S.D.Ind.1990).

■■ The court finds the following passage from a factually similar case persuasive to the issue at bar:

> While the Tax Court opinion states the facts alleged in the stipulation are "so found," ... no facts pertaining to fraud or its elements are mentioned in the portion of the stipulation included in the record before us. Rather, the stipulation only refers to uncontested income taxes and additions. Though the stipulation itself establishes the validity of the deficiencies,

neither they nor the existence of the underlying fraud are "admitted."

> Moreover, the Tax Court's opinion does not set forth any facts concerning the alleged fraud.... [E]ven though the penalty imposed by the Tax Court was based on the fraud penalty 26 U.S.C.A. § 6653(b) authorizes in cases where fraud is established, the issue of fraud was never litigated or admitted, nor was a specific factual finding concerning it made.

*Graham v. IRS (In re Graham),* 973 F.2d 1089, 1098 (3d Cir.1992), *aff'g, In re Graham,* 108 B.R. 498 (Bankr.E.D.Pa.1989). The consent judgment in the instant case contains no specific finding of fact or resolves the substance of the issues presented with respect to fraud, but merely reflects an agreement by the plaintiffs to the judgment. The Tax Court made no specific finding that the debtors made a fraudulent return or willfully attempted to evade tax liability in any way. The consent judgment merely reflects a compromised agreement by the debtors to the judgment which assesses an amount due and assesses "additions" pursuant to statutory authority. The relatively brief agreement between the parties raises not the slightest inference that the debtors committed fraud in submitting their tax returns or evince an intention that the parties agreed to be conclusively bound with respect to the issue of fraud. The record is devoid of any evidence that the agreement was based on the issues raised by the pleadings in the Tax Court or on some collateral consideration. *See United States v. International Bldg. Co.,* 345 U.S. 502, 505, 73 S.Ct. 807, 809, 97 L.Ed. 1182 (1953). *See generally,* Restatement (Second) of Judgments § 27 cmt. e (1982) (opining that "[t]here are many reasons why a party may choose not to raise an issue, or contest an assertion, in a particular action."). Thus, the entry of the civil fraud penalty by the Tax Court under I.R.C. § 6653(b), while disposing of the issue of liability, does not resolve the issues for nondischargeability under § 523(a)(1)(C). The fact that the debtors had stipulated to not contesting a fraction of the assessed civil penalties set forth as "additions" in Tax Court, cannot result in preclusion of the issue of fraud in bankruptcy court.

Accordingly, and for reasons stated, the issue of fraud will not be given preclusive effect and remains for decision in this action to determine dischargeability. It is therefore **ORDERED** that the Motion for Partial Summary Judgment filed by the United States of America, acting through the Department of Treasury and the Internal Revenue Service, is in all things **DENIED.**

**SO ORDERED.**