In re Shawn NOVOTNY, Debtor.

**Craig and Pat DENNIS, Plaintiffs,**

v.

**Shawn NOVOTNY, Defendant.**

Bankruptcy No. 98–30648.
Adversary No. 98–7033.

United States Bankruptcy Court, D. North Dakota.

Oct. 1, 1998.

Gary Ramsey, Dickinson, ND, for plaintiff.

Jack McDonald, Bismarck, ND, for defendant.

## MEMORANDUM OPINION AND ORDER

WILLIAM A. HILL, Bankruptcy Judge.

The instant matter arises from an Adversary Proceeding commenced by the plaintiffs, Craig and Pat Dennis, by Complaint filed on June 15, 1998, by which they seek to have a debt in excess of $100,000.00, stemming from a civil judgment entered in their favor in the District Court for Stark County, State of North Dakota, for the wrongful death of their daughter, declared nondischargeable in the bankruptcy case of the debtor-defendant, Shawn Novotny, pursuant to 11 U.S.C. § 523(a)(6). Now before the Court is their related Motion for Summary Judgment, filed on August 27, 1998, and to which Mr. Novotny belatedly filed an answer brief on September 30, 1998.[1]

---

**1.** The Court cannot help but observe that the debtor-defendant was placed in some peril by his attorney's failure to timely respond to the Dennises' Motion for Summary Judgment. In this respect, the Court refers said counsel to Local Rule of Bankruptcy Procedure 7056–1, which provides in full as follows:

Upon any motion for summary judgment pursuant to Fed.R.Civ.P. 56, there shall be attached to the motion and also included in the

## I.

The uncontroverted facts in this matter are as follows: The Dennises were the parents of Amy Dennis, who is now deceased. Ms. Dennis died from injuries sustained on April 17, 1994, as a result of Mr. Novotny shooting her in the back of the head with a rifle. Mr. Novotny's actions resulted in his criminal prosecution in Stark County, North Dakota, for the offense of Murder, a Class AA Felony in violation of Section 12.1–16–01(1) of the North Dakota Century Code.[2]

On March 7, 1995, Mr. Novotny entered into a plea agreement with a representative of the Office of Stark County State's Attorney, whereby Mr. Novotny agreed to plea guilty to, inter alia, the lesser criminal offense of Murder, a Class A Felony in violation of Section 12.1–16–10(2) of the North Dakota Century Code.[3] The agreement was approved by the District Court for Stark County, Case No. 94K–20, the Hon. Maurice R. Hunke presiding, in a Plea Agreement and Criminal Judgment entered on March 9, 1995, which provided, in pertinent part, as follows:

> The parties did ... offer the Court a negotiated plea agreement....

> The Court having been presented with said plea agreement, did determine that the Defendant, Shawn S. Novotny, did willingly, knowingly, and unconditionally consent and agree to all the terms and conditions set forth herein. Further, the Court determined that the Defendant was not now suffering from any known or recognized mental or physical illness or disease which would preclude the Defendant from understanding each and every condition of said plea agreement, nor was the Defendant under the influence of alcohol, narcotics or medication.

> The Court did then determine that there existed a factual basis for the criminal charge and the Defendant's plea of guilty thereof, and did further determine that said plea agreement was reasonable as to the interests of all parties concerned and informed the Defendant that the Court would accept the plea agreement as offered.

> The Court did then accept the plea of guilty as offered by the Defendant, to the criminal offense of: **MURDER,** a Class A Felony in violation of N.D.C.C. Section 12.1–16–01(2). The Court further accepted the stipulation of the State and the Defendant that the Defendant was a special of-

---

supporting brief, a separate, short and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried.

In response to the motion, the adverse party shall file, separate from the brief, a short and concise statement of the material facts as to which it is contended there exists a genuine issue to be tried. *The adverse party shall have 30 days after service of a brief in support of a motion for summary judgment within which to serve and file an answer brief.*

All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.

*Failure to file briefs within the prescribed time shall subject such motions to summary ruling and the failure to file a brief by the moving party shall be deemed an admission that, in the opinion of counsel, the motion is without merit, and such failure to file a brief by the adverse party shall be deemed an admission that, in the opinion of counsel, the motion is well taken.*

Local R.Bankr.P. 7056–1 (emphasis added).

2. Section 12.1–16–01(1) provides, in relevant part, as follows:

> A person is guilty of murder, a class AA felony, if the person:
> a. Intentionally or knowingly causes the death of another human being;
> ....

N.D.C.C. § 12.1–16–01(1).

3. Section 12.1–16–01(2) provides that:

> A person is guilty of murder, a class A felony, if the person causes the death of another human being under circumstances which would be class AA felony murder, except that the person causes the death under the influence of extreme emotional disturbance for which there is reasonable excuse. The reasonableness of the excuse must be determined from the viewpoint of a person in that person's situation under the circumstances as that person believes them to be. An extreme emotional disturbance is excusable, within the meaning of this subsection only, if it is occasioned by substantial provocation, or a serious event, or situation for which the offender was not culpably responsible.

N.D.C.C. § 12.1–16–01(2).

fender, pursuant to N.D.C.C. Section 12.1–32–09.

The Court then determined that the Defendant offered no legal cause so as to preclude the imposition of sentence or penalty at this time.

IT IS THEREFORE THE ORDER of the Court that the Defendant, Shawn S. Novotny, having been convicted of the criminal offense: **MURDER**, a Class A Felony in violation of N.D.C.C. Section 12.1–16–01(2), and having been determined to be a dangerous special offender pursuant to N.D.C.C. Section 12.1–32–09, shall be sentenced to serve a term of thirty (30) years from the date hereof in the North Dakota State Penitentiary. He shall receive credit against his sentence for time served in custody prior to the date hereof. The last five (5) years of said sentence shall be suspended on the following conditions:

1) That the Defendant shall make restitution in the amount of $9,000.00 to the family of Amy Dennis. Payments are to be made through the Clerk of District Court for Stark County, North Dakota, on a schedule to be prepared by Defendant's probation officer.

. . . .

(Emphasis in the original).

Thereafter, the Dennises commenced a civil action in the District Court for Stark County, Case No. 96–C–105, the Hon. Maurice R. Hunke again presiding, for the wrongful death of their daughter. Based upon "all pleadings of record, together with [a] Stipulation for Entry of Judgment signed by [the Dennises and Mr. Novotny] and their attorneys,"[4] the state district court entered its Findings of Fact, Conclusions of Law, and Order for Judgment on January 21, 1997, which provided as follows:

**4.** The parties' signed Stipulation for Entry of Judgment provided, in full, as follows:

The parties to this lawsuit have stipulated and agreed that a Judgment can be entered against the Defendant for the amount of $100,000.00 plus costs and disbursements herein.

*FINDINGS OF FACT*

1. Plaintiffs Craig Dennis and Pat Dennis are the parents of Amy Dennis, deceased. Craig Dennis and Pat Dennis have authority to represent the estate interests of Amy Dennis in this particular matter.

2. On April 17, 1994, *Defendant Shawn Novotny intentionally and maliciously shot Amy Dennis in the back of the head* which ultimately caused her death.

3. As a result of Defendant's actions, Plaintiffs have been deprived of consortium they would otherwise have enjoyed with their daughter.

From the findings of fact, the Court makes its

*CONCLUSIONS OF LAW*

1. The Court has jurisdiction over the parties to this action and the subject matter of this litigation.

2. Pursuant to the parties' Stipulation for Entry of Judgment, Plaintiffs Craig Dennis and Pat Dennis are entitled to have judgment against Defendant Shawn Novotny in the amount of $100,000.00 together with their costs and disbursements herein.

(Emphasis added). The state district court reiterated its conclusions of law in a further Judgment entered on February 7, 1997. A Statement of Judgment, issued from North Dakota's Unified Court Information System, indicates that the Dennises' costs and disbursements aggregated $95.00 in this matter, and that the civil judgment accumulates post-judgment interest at the rate of twelve percent per annum.

II.

Rule 56 of the Federal Rules of Civil Procedure governs the granting of summary judgment motions and is made applicable to bankruptcy proceedings by Rule 7056 of the Federal Rules of Bankruptcy Procedure. *See* Fed.R.Bankr.P. 7056. "Pursuant to Rule

All other terms of the parties' Stipulation and Agreement for entry of this Judgment and resolution of this lawsuit, are to be held in confidence and not disclosed in any way, shape, manner or form.

56(c), summary judgment is appropriate if there is no genuine issue as to any material fact or any conflicting inferences which can reasonably be drawn from undisputed facts, and the material facts, when viewed in a light that is most favorable to the party opposing the motion, demonstrate that the moving party is entitled to a judgment as a matter of law." *Neff v. Knodle (In re Knodle),* 187 B.R. 660, 662 (Bankr.D.N.D.1995). *See* Fed. R.Civ.P. 56(c);[5] *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). "The initial burden always falls directly on the movant to demonstrate the lack of any genuine issue of material fact, with the party opposing the motion to be given the full benefit of all favorable factual inferences." *Waswick v. Stutsman County Bank (In re Waswick),* 212 B.R. 350, 351 (Bankr.D.N.D.1997); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986); *Lower Brule Sioux Tribe v. South Dakota,* 104 F.3d 1017, 1021 (8th Cir.), cert. denied, —— U.S. ——, 118 S.Ct. 64, 139 L.Ed.2d 26 (1997).

### III.

In order to prevail upon their Motion for Summary Judgment, and thus, to obtain a declaration from this Court that their civil judgment is nondischargeable in the debtor's bankruptcy case, the Dennises must establish that no genuine issue as to any material fact exists in relation to their action under Section 523(a)(6) of the United States Bankruptcy Code, and that they are entitled to judgment as a matter of law under that statute. Section 523(a)(6) provides in relevant part that: "A discharge under section 727 ... of this title does not discharge an individual debtor from any debt for willful and malicious injury by the debtor to another entity or to the property of another entity[.]" 11 U.S.C. § 523(a)(6).

■ The Court has discussed this section in numerous opinions, and did so most recently in *Ehrman v. Feist (In re*

*Feist),* —— B.R. ——, Bankruptcy No./Adversary No. (Bankr.D.N.D. Sept. 8, 1998), in light of the United States Supreme Court's ruling in *Kawaauhau v. Geiger,* —— U.S. ——, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998), wherein the definition of the statutory element of "willfulness" was redefined by a unanimous Court. Under the Supreme Court's ruling in *Geiger,*

> The word "willful" in (a)(6) modifies the word "injury," indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury.... Moreover, the (a)(6) formulation triggers in the lawyer's mind the category "intentional torts," as distinguished from negligent or reckless torts. Intentional torts generally require that the actor intend "the consequences of an act," not simply "the act itself."

*Id.* at ——, 118 S.Ct. at 977 (quoting Restatement (Second) of Torts § 8A, comment a, p. 15 (1964)). As the Court went on to hold, "debts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)." *Id.* at ——, 118 S.Ct. at 978.

Concerning the element of "maliciousness," the United States Court of Appeals for the Eighth Circuit has stated that "malice must apply to a heightened level of culpability which goes beyond recklessness if it is to have a meaning independent of willful," *Johnson v. Miera (In re Miera),* 926 F.2d 741, 743 (8th Cir.1991), and has further defined the term to mean, "conduct 'targeted at the creditor at least in the sense that the conduct is certain or almost certain to cause harm.'" *Waugh v. Eldridge (In re Waugh),* 95 F.3d 706, 711 (8th Cir.1996) (quoting *Barclays Am./Business Credit Inc. v. Long (In re Long),* 774 F.2d 875, 881 (8th Cir.1985)).

In their Motion for Summary Judgment, the Dennises rely upon the state court judgments in order to establish the required elements of "willfulness" and "maliciousness" under Section 523(a)(6). In this connection,

---

5. Rule 56(c) provides in part that: "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

they place principal reliance upon the January 21, 1997 ruling of the state district court in which the court determined that, "[o]n April 17, 1994, Defendant Shawn Novotny *intentionally and maliciously* shot Amy Dennis in the back of the head which ultimately caused her death." (Emphasis added). In effect, the Dennises assert that the state court's finding of "intent" and "malice" under the particular facts of the civil action, very few of which have been revealed to this Court thus far, has collateral estoppel effect in the instant matter, that is, in determining whether Mr. Novotny's debt stemming from the civil judgment is dischargeable in bankruptcy, with the Dennises asserting that it is not.

■ The Court, however, is unable to reach the same conclusion. In *Olson v. United States (In re Olson)*, 170 B.R. 161 (Bankr.D.N.D.1994), the Court described in great detail the elements and policy implications underpinning its application of the doctrine of collateral estoppel, as follows:

> Although prior judgments have no res judicata effect in dischargeability actions under § 523(a), the United States Supreme Court has acknowledged that the narrower doctrine of collateral estoppel (issue preclusion) indeed applies in discharge exception proceedings to bar the relitigation of factual or legal issues that were determined in a prior proceeding. In the words of the United States Supreme Court in *Grogan* [*v. Garner*, 498 U.S. 279, 284, 111 S.Ct. 654, 658, 112 L.Ed.2d 755 (1991)]:
>
> > [A] bankruptcy court could properly give collateral estoppel effect to those elements of the claim *that are identical* to the elements required for discharge and which were actually litigated and determined in the prior action.
>
> The use of collateral estoppel in dischargeability proceedings under § 523(a) is, however, subject to the caveat that it be applied with great care since the bankruptcy courts are vested with the exclusive jurisdiction to determine the nondischargeability of debts.... Indeed, the policy considerations attendant a bankruptcy discharge weigh strongly in favor of *nonpreclusion.*

The fundamental purpose of collateral estoppel is not to foreclose a party from putting forth contested factual issues before the court, but rather is intended to bar their submission twice. The United States Supreme Court has noted [in *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 336 n. 23, 99 S.Ct. 645, 654 n. 23, 58 L.Ed.2d 552 (1979)] that "the whole premise of collateral estoppel is that once an issue has been resolved in a prior proceeding, there is no further fact finding function to be performed."

*Id.* at 166 (emphasis added and citations omitted). The concerns cited by the Supreme Court find substantial effect in the first of the four elements of the doctrine of collateral estoppel, all of which must be clearly established in order for an issue to be given preclusive effect in a subsequent proceeding. Those elements may be stated as follows:

1. The issue sought to be precluded must be the same issue as that involved in the prior action;

2. The issue must have been actually litigated;

3. The issue must have been determined by a valid and final judgment; and

4. The determination of the issue must have been essential to the final judgment.

*See In re Miera*, 926 F.2d at 743; *In re Olson*, 170 B.R. at 166; *Ashton v. Burke (In re Burke)*, 83 B.R. 716, 723 (Bankr.D.N.D. 1988).

■ The party premising its summary judgment motion upon the doctrine of collateral estoppel in a Section 523(a)(6) action additionally carries the burden of satisfying all four elements in order to prevail thereon. *See In re Miera*, 926 F.2d at 743; *In re Olson*, 170 B.R. at 166. As a last note, "this [C]ourt has always maintained that in order for collateral estoppel to apply, the factual basis for the findings made by a previous tribunal must be 'clear.'" *In re Olson*, 170 B.R. at 166.

■ Under the foregoing standard, the Dennises' Motion for Summary Judgment must fail. First, the factual bases for the state district court's finding that Shawn No-

votny acted "intentionally and maliciously" in shooting Amy Dennis are entirely unclear and undisclosed to this Court. Nothing beyond the fact that (1) the Dennises were Amy's parents and that (2) Mr. Novotny shot Ms. Dennis, has been revealed in this forum.

Second, the standard upon which the state district court based its determination that Mr. Novotny acted "intentionally and maliciously" with regard to Ms. Dennis is unknown. This Court is unable to determine from the state district court's January 21, 1997 ruling, in which that finding was made, if that court did indeed address the same issue presented here, that is, whether Mr. Novotny acted "willfully and maliciously," as those terms are understood within the context of bankruptcy and in light of the Supreme Court's ruling in *Geiger,* in the action he directed towards Ms. Dennis and which led to her demise. Thus, the Court is unable to conclude that the litigation of that question in this forum would amount to relitigation of the issue addressed by the state district court.

In sum, it is not at all clear, at present, that the state court's finding of "intent" and "malice" on the part of Mr. Novotny for purposes of the Dennises' civil action against him are identical to the elements which, if established here, would preclude the discharge in bankruptcy of his debt stemming from the civil judgment. Therefore, the Court can only conclude that the issues presented in the Adversary Proceeding commenced by the Dennises concerning the question of the dischargeability of Mr. Novotny's indebtedness to them are, at this point, contested issues which are not amenable to summary judgment.

IV.

For the foregoing reasons, the Motion for Summary Judgment filed by Craig and Pat Dennis on August 27, 1998, in the case of the debtor-defendant Shawn Novotny, Bankruptcy No. 98–30658/Adversary No. 98–7033, is DENIED.

SO ORDERED.