In re Daniel L. SLOMINSKI and Kelli D. Slominski, a/k/a Kelli D. Shumaker, Debtors.

**Community National Bank, Plaintiff,**

v.

**Daniel L. Slominski, Defendant.**

**Bankruptcy No. 98–30458.**
**Adversary No. 98–7031.**

United States Bankruptcy Court,
D. North Dakota.

Oct. 23, 1998.

Daniel L. Slominski, Bismarck, ND, pro se.

John Foster, Grand Forks, ND, for Plaintiff.

## MEMORANDUM OPINION AND ORDER

WILLIAM A. HILL, Bankruptcy Judge.

This Adversary Proceeding was commenced by the plaintiff Community National Bank ("CNB") by Complaint filed on June 12, 1998, seeking to have a debt of the defendant Daniel L. Slominski ("Slominski") in excess of $160,000.00 declared nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A). Slominski's debt to CNB arises from a default judgment which CNB obtained against him in the District Court for the County of Grand Forks, State of North Dakota, Civil Case No. 97–C–960. CNB argues, under the doctrine of collateral estoppel, that it has met the required elements of Section 523(a)(2)(A) in the instant matter through findings of fraud on the part of Slominski as contained within the default judgment. Slominski filed his Answer to the Complaint, in the form of a general denial of the allegations contained therein, on July 17, 1998. Trial was held in this matter on October 20, 1998. Slominski, who is proceeding pro se in this matter, was unable to make an appearance as he is presently incarcerated in the North Dakota State Penitentiary. At trial CNB moved for, and the Court allowed, consideration of this action under an alternative basis for nondischargeability, to wit, 11 U.S.C. § 523(a)(6). From the evidence presented, the Court makes the following findings of fact and conclusions of law:

### I. Findings of Fact

The factual background of this matter has been little developed in these proceedings. Based upon the scant information adduced at trial, and upon that contained within the case file in this matter, the Court has been able to determine that: Slominski was president of Dan Slominski Farm Services, Inc. ("the company"). On April 1, 1996, Slominski executed and delivered to CNB a guaranty of a promissory note in the amount of $160,000.00 which was given by the company to CNB, and contemporaneously collateralized the guaranty by granting CNB a security interest in various of his assets, including his inventory and equipment. The company filed its petition for relief under Chapter 7 of the United States Bankruptcy Code on June 18, 1997. At the company's Section 341 first meeting of creditors, Slominski testified that items of CNB's collateral were present at his place of business or upon his father's property. Subsequently, CNB discovered that many of these items were missing and had apparently been sold by Slominski. Slominski filed his voluntary petition for relief under Chapter 7 on March 24, 1998.

On or about November 3, 1997, CNB obtained a default judgment against Slominski in the District Court for the County of Grand Forks, State of North Dakota, Civil Case No. 97–C–960, in the amount of $161,512.52 in principal, and $2,249.01 in interest through June 18, 1997, with per diem interest of $45.3562 accruing thereafter. The state district court did not, itself, undertake to make specific findings of fact or conclusions of law in the matter, but rather accepted those proffered, and crafted, by counsel for CNB, the same counsel representing the bank in this Adversary Proceeding.

By its Complaint in the instant matter, CNB prayed for relief based upon figures contained within the default judgment. However, at trial, CNB disclosed that the current outstanding balance on its judgment debt consists of $127,498.65 in principal, and $21,679.74 in interest as of October 19, 1998, with a per diem accrual of interest of $35.8744 thereafter. Presently, CNB asserts that these sums should be determined to be nondischargeable pursuant to either Section 523(a)(2)(A) or 523(a)(6), based upon the default judgment entered in the state district court, which, CNB contends, should be given collateral estoppel effect. The pertinent portion of the judgment upon which CNB relies provides as follows:

Having represented under oath that all of the foregoing items were available to the Bank, and the Bank having confirmed they are not in fact available and cannot be

found with reasonable diligence, Plaintiff Bank herein in good faith alleges that, it believes that it has been defrauded by Daniel L. Slominski and Daniel Slominski Farm Services, Inc., with the vehicles, trailers and other items shown missing above as having been sold out of trust or otherwise disposed of without authorization and with intent to defraud.

*Community Nat'l Bank v. Slominski,* District Court for the County of Grand Forks, State of North Dakota, Civil Case No. 97–C–960, para. 19 (Nov. 3, 1997).

## II. Conclusions of Law

■ Presently, CNB seeks a determination that Slominski's indebtedness to it, which currently aggregates in excess of $149,000.00, is nondischargeable pursuant to Section 523(a)(2)(A) or 523(a)(6) of the United States Bankruptcy Code. In this respect, CNB carries the burden of proof under either subpart of that section, the standard for which is proof by a preponderance of the evidence. *See Grogan v. Garner,* 498 U.S. 279, 291, 111 S.Ct. 654, 661, 112 L.Ed.2d 755 (1991); *ITT Life Ins. Co. v. Haakenson (In re Haakenson),* 159 B.R. 875, 876 (Bankr. D.N.D.1993); *Dan Porter Motors, Inc. v. Decker (In re Decker),* 153 B.R. 997, 1000 (Bankr.D.N.D.1993).

■ Section 523(a)(2)(A) provides, in pertinent part, as follows: "A discharge under section 727 ... of this title does not discharge an individual debtor from any debt ... for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by ... false pretenses, a false representation, or actual fraud ...." 11 U.S.C. § 523(a)(2)(A). "For a debt to be excepted from discharge under [S]ection 523(a)(2)(A), the funds themselves must have been obtained by fraud *in the inception.*" *In re Decker,* 153 B.R. at 1001 (emphasis added). If such is the case, a creditor must prove each of the following elements in order to then succeed in a nondischargeability action brought under this provision:

(1) that the debtor made false representations;

(2) that at the time made, the debtor knew them to be false;

(3) that the representations were made with the intention and purpose of deceiving the creditor;

(4) that the creditor justifiably relied on the representations;

(5) that the creditor sustained the alleged injury as a proximate result of the representations having been made.

*Security Bank v. Wehri (In re Wehri),* 212 B.R. 963, 967 (Bankr.D.N.D.1997); *see Field v. Mans,* 516 U.S. 59, 73–75, 116 S.Ct. 437, 445, 133 L.Ed.2d 351 (1995).

■ Under the facts of this nondischargeability action against Slominski, CNB's reliance upon Section 523(a)(2)(A) is misplaced. CNB conceded at trial that the debt in question does not stem from funds or property obtained by Slominski through *fraud in the inception,* and nothing in evidence points to any false representations made by the debtor with intent to defraud CNB at the time his debt was incurred. Indeed, CNB is not contending for purposes of the instant matter that Slominski defrauded it at the time he or his company *initially* obtained funds from the bank. Rather, CNB asserts that Slominski defrauded it at a later point in time, when he *subsequently* converted property in his possession, and under his control, in which CNB held a security interest.[1] Therefore, CNB has failed to meet the threshold requirement of Section 523(a)(2)(A). Its nondischargeability action is better placed with Section 523(a)(6).

■ Section 523(a)(6) provides in pertinent part that, "[a] discharge under section 727 ... of this title does not discharge an individual debtor from any debt ... for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). This Court has discussed Section 523(a)(6) in numerous opinions, and did so recently in *Ehrman v. Feist (In re Feist),* 225 B.R. 450 (Bankr.

---

1. Moreover, as to the issue of fraud, the finding of fact of the state court upon which CNB relies is not a finding of fraud on the part of Slominski, rather it is a finding that *CNB believes and alleges* that various items were sold or otherwise disposed of with intent to defraud.

**436**

D.N.D.1998), in light of the United States Supreme Court's ruling in *Kawaauhau v. Geiger*, 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998) [hereinafter referred to as "*Geiger*"]. There the Supreme Court, in affirming the Court of Appeals for the Eighth Circuit in *Kawaauhau v. Geiger (In re Geiger)*, 113 F.3d 848 (8th Cir.1997) (en banc) [hereinafter referred to as "*In re Geiger*"], and in adopting the bulk of the Circuit's analysis therein, redefined the statutory element of "willfulness" in an unanimous opinion. Under the Supreme Court's ruling in *Geiger*:

> The word "willful" in (a)(6) modifies the word "injury," indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury.... Moreover, the (a)(6) formulation triggers in the lawyer's mind the category "intentional torts," as distinguished from negligent or reckless torts. Intentional torts generally require that the actor intend "the consequences of an act," not simply "the act itself."

*Id.* at ——, 118 S.Ct. at 997 (quoting Restatement (Second) of Torts § 8A, comment a, p. 15 (1964)).[2] The Supreme Court went on to hold that, "debts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)." *Id.* at ——, 118 S.Ct. at 998.

■ Concerning the second element which must be proven under Section 523(a)(6), that of "malice" or "maliciousness," the Eighth Circuit has found the term to signify, "conduct 'targeted at the creditor at least in the sense that the conduct is certain or almost certain to cause harm.'" *Waugh v. Eldridge (In re Waugh)*, 95 F.3d 706, 711 (8th Cir. 1996) (quoting *Barclays Am./Business Credit Inc. v. Long (In re Long)*, 774 F.2d 875, 881 (8th Cir.1985)).[3] In *Dennis v. Novotny (In re Novotny)*, 226 B.R. 211 (Bankr.D.N.D.1998), this Court, seeking compliance with the Eighth Circuit's directive in both *Barclays Am./Business Credit Inc. v. Long (In re Long)*, 774 F.2d 875, 880–81 (8th Cir.1985), and *Johnson v. Miera (In re Miera)*, 926 F.2d 741, 743 (8th Cir.1991), held that maliciousness must have a meaning independent of willfulness. In so doing, the Court ruled as follows:

> [I]f "maliciousness" continues to have a meaning independent of "willfulness" as that term has been redefined in *Geiger*, and one which, in order to maintain its integrity apart from "willfulness," applies to a "heightened level of culpability" on the part of the debtor, then this Court is of the belief that "maliciousness" under Section 523(a)(6) is not only conduct targeted at the creditor in the sense that the conduct is certain or almost certain to cause harm, but is also conduct "*committed without just cause or excuse.*" *Tinker v. Colwell*, 193 U.S. 473, 486, 24 S.Ct. 505, 48 L.Ed. 754 (1904); *see [McAlister v. Slosberg (In re Slosberg)*, 225 B.R. 9, 20–21 (Bankr. D.Me.1998)].[4] In this way, "Section

---

**2.** Although *Geiger* concerned facts stemming from an incident of medical malpractice, and a malpractice judgment, it has since been applied unilaterally to *all* actions arising under Section 523(a)(6), *see, e.g., Salem Bend Condominium Assoc. v. Bullock–Williams (In re Bullock–Williams)*, 220 B.R. 345 (6th Cir. BAP 1998) (affirming bankruptcy court's dismissal of plaintiff's Complaint to have debtor's debt stemming from breach of contract excepted from discharge, under Supreme Court's holding in *Geiger*, "that the intent required for willful and malicious injury is the intent to cause the resultant harm"); *Florida Outdoor Equip., Inc. v. Tomlinson (In re Tomlinson)*, 220 B.R. 134 (Bankr. M.D.Fla.1998) (debtor's act of retaining sale proceeds of secured creditor's inventory held not to be "willful" under Supreme Court's *Geiger* decision, and thus, not excepted from discharge); *Allstate Ins. v. Dziuk (In re Dziuk)*, 218 B.R. 485 (Bankr.D.Minn.1998) (debtor's act of setting fire to an icehouse adjacent to home, which fire then spread to home, held, inter alia, not to be "willful" under Supreme Court's *Geiger* decision, and debt therefrom held not to be excepted from discharge); and has been so applied in this Court, *see Ehrman v. Feist (In re Feist)*, 225 B.R. 450 (Bankr.D.N.D.1998).

**3.** While *In re Long* applied its definition of "maliciousness" to transfers in breach of securities agreements, "subsequent opinions of the Eighth Circuit have extended the definitions to other willful and malicious injuries." *Allstate Ins. v. Dziuk (In re Dziuk)*, 218 B.R. 485, 487 (Bankr. D.Minn.1998) (citing, as an example, *Johnson v. Miera (In re Miera)*, 926 F.2d 741 (8th Cir.1991)).

**4.** As the *Slosberg* Court observes, this language from *Tinker* on the element of "malice" was left undisturbed by the *Geiger* Court. Moreover, it is

523(a)(6) malice can have meaning ... that adds something to the statute's willfulness requirement[, .... while at the same time] withdraw[ing] from the discharge exception obligations arising from acts done knowing that injury is a substantially certain consequence, but done for reasons that justify or excuse the act." *Id.*

*In re Novotny,* 226 B.R. 211 219 (Bankr. D.N.D.1998).

Presently, CNB argues that it has met the requirements of Section 523(a)(6) through the contents of the default judgment it obtained against Slominski in the state district court. It argues, then, for collateral estoppel effect as to the default judgment, and, concomitantly, that a determination of nondischargeability pursuant to Section 523(a)(6) should issue based thereon. This Court, however, does not reach the same conclusion.

 In *Olson v. United States (In re Olson),* 170 B.R. 161 (Bankr.D.N.D.1994), the Court described in great detail the elements and policy implications underpinning its application of the doctrine of collateral estoppel, as follows:

Although prior judgments have no res judicata effect in dischargeability actions under § 523(a), the United States Supreme Court has acknowledged that the narrower doctrine of collateral estoppel (issue preclusion) indeed applies in discharge exception proceedings to bar the relitigation of factual or legal issues that were determined in a prior proceeding. In the words of the United States Supreme Court in *Grogan [v. Garner,* 498 U.S. 279, 284, 111 S.Ct. 654, 658, 112 L.Ed.2d 755 (1991)]:

[A] bankruptcy court could properly give collateral estoppel effect to those elements of the claim *that are identical* to the elements required for discharge and which were actually litigated and determined in the prior action.

does not appear to have been included in the Congressional repudiation of *Tinker*'s "willfulness" standard through the enactment of 11 U.S.C. § 523(a)(6), and, further, is not contrary to Eighth Circuit case law on this subject. *See* H.R.Rep. No. 595, 95th Cong., 2d Sess. 365, reprinted in 1978 U.S.Code Cong. & Ad-

The use of collateral estoppel in dischargeability proceedings under § 523(a) is, however, subject to the caveat that it be applied with great care since the bankruptcy courts are vested with the exclusive jurisdiction to determine the nondischargeability of debts.... Indeed, the policy considerations attendant a bankruptcy discharge weigh strongly in favor of *nonpreclusion.*

The fundamental purpose of collateral estoppel is not to foreclose a party from putting forth contested factual issues before the court, but rather is intended to bar their submission twice. The United States Supreme Court has noted [in *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 336 n. 23, 99 S.Ct. 645, 654 n. 23, 58 L.Ed.2d 552 (1979)] that "the whole premise of collateral estoppel is that once an issue has been resolved in a prior proceeding, there is no further fact finding function to be performed."

Id. at 166 (emphasis added and citations omitted); *see Dennis v. Novotny (In re Novotny),* 224 B.R. 917, 922 (Bankr.D.N.D. 1998). The concerns cited by the Supreme Court find substantial effect in the first of the four elements of the doctrine of collateral estoppel, all of which must be clearly established in order for an issue to be given preclusive effect in a subsequent proceeding. Those elements may be stated as follows:

1. The issue sought to be precluded must be the same issue as that involved in the prior action;

2. The issue must have been actually litigated;

3. The issue must have been determined by a valid and final judgment; and

4. The determination of the issue must have been essential to the final judgment.

*See Tudor Oaks Ltd. Partnership v. Cochrane (In re Cochrane),* 124 F.3d 978, 983 (8th Cir.1997); *Stoebner v. Parry, Murray, Ward & Moxley,* 91 F.3d 1091, 1094 (8th Cir.1996) (per curiam); *In re Miera,* 926 F.2d at 743;

min.News 5787, 6320–21; *Geiger v. Kawaauhau (In re Geiger),* 113 F.3d 848, 851 (8th Cir.1997); *Johnson v. Miera (In re Miera),* 926 F.2d 741, 744 (8th Cir.1991); *Hartley v. Jones (In re Hartley),* 869 F.2d 394, 395 (8th Cir.1989); *Cassidy v. Minihan,* 794 F.2d 340, 343 (8th Cir.1986).

*In re Novotny,* 224 B.R. 917, 921–22 (Bankr. D.N.D.1998); *In re Olson,* 170 B.R. at 166; *Ashton v. Burke (In re Burke),* 83 B.R. 716, 723 (Bankr.D.N.D.1988). Finally, "this [C]ourt has always maintained that in order for collateral estoppel to apply, the factual basis for the findings made by a previous tribunal must be 'clear.'" *In re Olson,* 170 B.R. at 166.

Thus, in maintaining its present action against the defendant, it fell to CNB to establish that Slominski's debt was incurred through his "willful and malicious injury ... to [CNB] or to [its] property." As is evident from this Court's previous discussion on this subject, the task has become a difficult one, indeed, to accomplish in light of recent case law. And, with the foregoing discussion in mind, it is evident that CNB has failed in its burden of proof in this respect.

■ First, CNB premises its nondischargeability action entirely upon achieving collateral estoppel effect as to the default judgment it obtained in the state district court against Slominski. Under the foregoing standard expounded by the Court, collateral estoppel cannot apply to the state court judgment related to this matter. As an initial matter, the default judgment was drafted in its entirety by CNB's counsel in this matter, a fact which somewhat erodes its claim to collateral estoppel effect in these proceedings. More importantly, however, the issue "decided" in the state forum is not that which is now in contention. The default judgment did not address the elements essential to CNB's present action in this Court, that is, it did not in any way address the requirements of Section 523(a)(6), or the standards therefor, as have been recently reshaped by the Supreme Court in *Geiger.*

Concerning its burden of proof under Section 523(a)(6), CNB has utterly failed to satisfy either of the requirements of "willfulness" or "maliciousness." In that respect, it has failed to demonstrate in any way that Slominski intended not only the act of conversion of the bank's collateral, *but also the attendant harm which the bank thereby suffered.* Further, it has failed to establish that Slominski's conduct was targeted at CNB and that it was committed without just cause

or excuse. Quite simply, there is no basis, at present, upon which this Court could make any affirmative findings or conclusions as to Slominski's motivation in selling CNB's collateral such that the requirements of Section 523(a)(6) might be satisfied. Accordingly, CNB's Adversary Complaint to have Slominski's indebtedness determined to be nondischargeable must fail.

### III. Conclusion

For the foregoing reasons, the Complaint of Community National Bank is **DISMISSED.**

**JUDGMENT MAY BE ENTERED ACCORDINGLY.**

**SO ORDERED.**