No. 95-2662
_____

John R. Stoebner, Trustee of     *
the Bankruptcy Estate of     *
T.G. Morgan, Inc.,     *
    *
       Plaintiff-Appellant,     *
    *   Appeal from the United States
   v.     *   District Court for the
    *   District of Minnesota.
Parry, Murray, Ward & Moxley,     *
formerly known as Parry,     *     [PUBLISHED]
Murray, Ward & Cannon,     *
    *
       Defendant-Appellee.     *

_____

Submitted: February 15, 1996

Filed: July 31, 1996
_____

Before HANSEN, LAY and JOHN R. GIBSON, Circuit Judges.
_____

PER CURIAM.

T. G. Morgan, Inc. (TGM) is a Minnesota corporation formerly engaged in the business of selling rare coins for investment. Michael W. Blodgett was the founder, president, and majority owner of TGM. Diane Blodgett is his wife. In August, 1991, the Federal Trade Commission sued TGM and Michael Blodgett (the "FTC Action") for deceptive trade practices, seeking permanent injunctive relief and consumer redress.[1]

_____

[1]Between 1985 and 1992, TGM made sales of rare coins in amounts in excess of approximately $50 million. TGM achieved this success, however, by operating as a Ponzi scheme in which investors were lured into purchasing rare coins by the expectation of future profits upon the resale of those coins through TGM. TGM sold its coins at inflated prices; investors who made a profit on resale did so only because their coins were resold to other investors at even more inflated prices.

In January, 1992, while the FTC Action was pending, TGM creditors filed an involuntary bankruptcy petition against TGM. Thereafter, TGM, Blodgett, and the FTC reached a settlement (the "Settlement Agreement") and the district court entered final judgment on a consent order dated March 4, 1992. Federal Trade Commission v. T.G. Morgan, Inc., No. 4-91-638 (D. Minn. Mar. 5, 1992). The Settlement Agreement provided for the creation of a "Settlement Estate," to pay for claims of defrauded coin purchasers, and a "Litigation Estate,"[2] to fund legal fees for anticipated criminal defense costs of Michael and Diane Blodgett.[3] The Settlement Agreement stipulated that any excess funds advanced from the Litigation Estate were to be returned to that estate to be subsequently distributed, if necessary, by the FTC receiver at the direction of Michael Blodgett.

Upon Stoebner's appointment as Trustee of the Bankruptcy

---

[2]The Settlement and Litigation Estates consisted of certain assets to be transferred to the FTC by T.G. Morgan, Michael Blodgett, and his wife, Diane Blodgett. The FTC settlement provided that a receiver would liquidate the assets in the two estates and disburse the money in each of the estates according to a specified procedure. Assets in the Litigation Estate were sold to fund the legal fund with $300,000. All remaining assets in the Litigation Estate were then transferred to the Settlement Estate.

The law firm of Meshbesher & Spence represented Michael Blodgett for $250,000. Diane Blodgett originally retained Douglas Kelly to represent her. She then terminated her relationship with him, and hired Philip Resnick. Blodgett then terminated her relationship with Resnick and hired Parry, Murray to represent her. It appears that the initial transfer of $50,000 to Kelly took place on March 9, 1992.

[3]Michael Blodgett was criminally prosecuted for mail and wire fraud in connection with his actions as president of TGM. He was convicted of mail fraud; this Court affirmed his conviction on appeal. See United States v. Blodgett, 32 F.3d 571 (8th Cir. 1994), cert. denied, 115 S. Ct. 1414 (1995). Diane Blodgett was not charged.

Estate,[4] he immediately obtained a district court order directing the FTC receiver to turn over any assets remaining in the Settlement Estate on the ground that they were property of the TGM bankruptcy estate.[5] Federal Trade Commission v. T.G. Morgan, Inc., No. 4-91-638 (D. Minn. Aug. 21, 1992) (the "Turnover Order").

After the Turnover Order, Diane Blodgett changed attorneys, hiring the law firm of Parry, Murray, Ward & Moxley (Parry, Murray) to replace Philip Resnick. At the time Blodgett severed the relationship, Resnick possessed $25,649.71 of the retainer he received from Blodgett's previous attorney, which had in turn had come from the TGM Litigation Estate. Unsure of the proper disposition of the retainer, Resnick petitioned the district court for direction. The district court ordered Resnick to remit the funds to the FTC receiver for disbursement in accordance with the FTC settlement. Federal Trade Commission v. T.G. Morgan, Inc., No 4-91-638 (D. Minn. Apr. 20, 1993) (order directing return of excess funds to the Litigation Estate)

Concerned that return of the legal funds to the FTC receiver would be tantamount to their transfer to the Bankruptcy Trustee pursuant to the Turnover Order, Parry, Murray, on behalf of Diane Blodgett, filed a motion for reconsideration. The district court denied the motion for reconsideration in June, 1993, Federal Trade Commission v. T.G. Morgan, Inc., No. 4-91-638 (D. Minn. June 15,

---

[4]Subsequent to the filing of the FTC complaint, but prior to the entry of judgment, creditors of T.G. Morgan filed a Chapter 7 involuntary bankruptcy petition against it pursuant to 11 U.S.C. § 303. T.G. Morgan then converted the bankruptcy case to one under Chapter 11, but on May 28, 1992, the bankruptcy court converted the case to Chapter 7 and appointed John Stoebner the Chapter 7 trustee.

[5]The Turnover Order dealt exclusively with assets in the Settlement Estate and was silent with respect to the Litigation Estate. By the time the district court issued the turnover order, the Litigation Estate had no assets, exhausted by payments to criminal defense counsel.

1993) (order denying Blodgett's motion for reconsideration), noting that its earlier order of April 20, 1993 merely required Resnick and the FTC receiver to comply with the terms of the Settlement Agreement, which provided that excess funds in the possession of an attorney should be returned to the Litigation Estate and transferred at the direction of Michael Blodgett.[6] Michael Blodgett then directed the receiver to transfer the funds to Parry, Murray for its criminal defense of his wife.

In the adversarial bankruptcy proceeding below, Stoebner sought to recover the money transferred to Parry, Murray under 11 U.S.C. § 549, which allows a bankruptcy trustee to recover post-petition transfers by a debtor that are not authorized by the bankruptcy court.[7] Parry, Murray moved for summary judgment, asserting that Stoebner was collaterally estopped from pursuing the section 549(a) claim based on the district court's June 15, 1993 order denying Blodgett's motion for reconsideration. Although Parry, Murray failed to plead the affirmative defense of collateral estoppel in its answer, the bankruptcy court construed Parry,

---

[6]In a memorandum to the district court, Stoebner argued that legal funds in the possession of the FTC receiver should be turned over to him in compliance with the Turnover Order. The district court rejected this argument, noting that turning over the legal funds may not be consistent with the Settlement Agreement.

Although Stoebner alerted the district court and the parties to possible grounds for setting aside the Settlement Agreement, Stoebner noted that that issue was not properly before the district court on the 1992 turnover motion, and was not presented in the motions preceding the district court's June 15, 1993 order denying Diane Blodgett's motion for reconsideration.

[7]Stoebner filed a similar claim against the law firm retained to defend Michael Blodgett. In an unpublished decision, this Court affirmed the district court's order granting summary judgment on the ground that Stoebner was judicially estopped from challenging the Settlement Agreement. Stoebner v. Meshbesher & Spence, 72 F.3d 134 (8th Cir. 1995) (table). Neither Stoebner nor Parry, Murray raise any claim of judicial estoppel in this action, and, at oral argument, both parties agreed the doctrine is not implicated in this case.

Murray's summary judgment motion as one to amend its answer to add the estoppel defense and expressly allowed the amended answer. The court then denied Stoebner's motion for summary judgment, granted Parry, Murray's motion for summary judgment, and entered judgment in favor of Parry, Murray on Stoebner's claim. The district court affirmed the bankruptcy court's judgment in an order entered on June 21, 1995. We reverse and vacate the judgment of the district court with directions to remand to the bankruptcy court for further proceedings.

Discussion

We reject Stoebner's argument that the bankruptcy court improperly allowed Parry, Murray to raise collateral estoppel in its summary judgment motion because Stoebner has failed to show that he lacked notice of the defense, or that Parry, Murray's delay prejudiced his ability to respond. See Sanders v. Department of the Army, 981 F.2d 990, 991 (8th Cir. 1992) (per curiam) (district court did not have to require formality of amended answer, and properly exercised discretion to allow government to raise affirmative defense for first time in motion to dismiss, which was sufficient notice to plaintiff); see also Camarillo v. McCarthy, 998 F.2d 638, 639 (9th Cir. 1993) (in absence of prejudice, affirmative defense may be raised for first time in summary judgment motion); but cf. Sayre v. Musicland Group, Inc., 850 F.2d 350, 355 (8th Cir. 1988) (holding no error in denying motion to amend answer to include affirmative defense when plaintiff's estate would suffer substantial prejudice if forced to rebut defendant's allegations because plaintiff was deceased). Stoebner has not claimed prejudice, nor is any suggested by the record. The defense of collateral estoppel was not waived.

Nonetheless, we conclude the Bankruptcy Court incorrectly determined that collateral estoppel barred Stoebner's section 549 claim. Collateral estoppel "means simply that when an issue of

-5-

ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." Schiro v. Farley, 114 S. Ct. 783, 790 (1994) (citation omitted). Four elements must exist in order to bar relitigation of a factual issue in a subsequent proceeding: (1) the issue sought to be precluded must be the same as that involved in the prior action; (2) the issue must have been litigated in the prior action; (3) the issue must have been determined by a valid and final judgment; and (4) the determination must have been essential to the prior judgment. In re Miera, 926 F.2d 741, 743 (8th Cir. 1991).

The Bankruptcy Court based its collateral estoppel decision on the district court's June 15, 1993 order denying Diane Blodgett's motion for reconsideration of its earlier order regarding the disposition of funds retained by Resnick. That order, however, meets none of the four requirements for collateral estoppel because neither the district court nor the parties in the FTC Action addressed the crucial factual issue in this case: whether the money in the Litigation Estate came from the debtor. The district court simply determined that the FTC Settlement Agreement, rather than the Turnover Order, governed the disposition of the legal funds and required Resnick to return the money to the Litigation Estate.

The June 15 Order denying Blodgett's motion for reconsideration did not determine Stoebner's rights under section 549 because neither the legal issue of section 549 nor the factual issue of the origination of the money received by Parry, Murray was before the district court. The question of whether money in the Litigation Estate originally came from the TGM was not "actually litigated" in the FTC action, was not "determined by" the district court, and was not "necessary" to the district court's determination not to reconsider its prior order. Because the requirements for application of collateral estoppel are not

present, we reverse the district court's judgment granting summary judgment to Parry, Murray.

Judgment reversed with directions to remand to the bankruptcy court for further proceedings.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.