# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 97-3104

_____

In re: T. G. Morgan, Inc., Debtor    *
   *
   *

John R. Stoebner, Trustee of the    *    Appeal from the United States
Bankruptcy Estate of T. G. Morgan,    *    District Court for the
Inc.,    *    District of Minnesota.
   *
      Appellant,    *
   *
      v.    *
   *
Parry, Murray, Ward & Cannon,    *
   *
      Appellees.    *

_____

Submitted: March 13, 1998
Filed: April 5, 1999

_____

Before WOLLMAN and HANSEN, Circuit Judges, and GOLDBERG,[1] Judge.

_____

HANSEN, Circuit Judge.

_____

[1]The Honorable Richard W. Goldberg, Judge, United States Court of International Trade, sitting by designation.

This rather convoluted bankruptcy appeal comes to us for the second time. Mr. Stoebner, the Appellant, is the Chapter 7 Trustee of the corporate debtor, T. G. Morgan, Inc. (TGM). Stoebner brought an adversary action in bankruptcy court pursuant to 11 U.S.C. § 549(a) against the Appellee, Parry, Murray, Ward & Cannon (Parry Murray), a Utah law firm. Stoebner sought to recover for the bankruptcy estate money which had been transferred to the law firm by a Federal Trade Commission receiver at the direction of one Michael Blodgett, the principal officer of the bankrupt debtor corporation, to pay the attorney's fees for Blodgett's wife, Diane, who was represented by Parry Murray. The bankruptcy court granted summary judgment to the law firm on the basis that Stoebner was collaterally estopped from asserting the claim by virtue of a decision rendered in a related case by the United States District Court for the District of Minnesota. The district court affirmed the bankruptcy court's disposition of Stoebner's section 549(a) claim, and Stoebner appealed to this court. We determined that collateral estoppel did not bar the claim, and we reversed the district court's judgment and remanded the case for further proceedings. See Stoebner v. Parry, Murray, Ward & Cannon, 91 F.3d 1091 (8th Cir. 1996) (Stoebner I). Our prior panel opinion sets forth many of the underlying operative facts and we will not repeat all of them here, but some of them are necessary for an understanding of the present posture of the case.

The debtor corporation was engaged in a Ponzi-type fraudulent scheme involving the sale and resale of rare coins to the tune of some $50 million. Id. at 1092 n.1. In August 1991, the Federal Trade Commission (FTC) sued TGM and Mr. Blodgett for injunctive relief and to recover for the victims of the scheme. Id. at 1092. While the FTC suit was pending, creditors of TGM forced it into involuntary bankruptcy in early 1992, and Mr. Stoebner was eventually appointed as the Chapter 7 Trustee for the debtor in late May 1992. Before Mr. Stoebner's appointment however, the FTC, Blodgett, his wife Diane, and TGM reached a settlement of the FTC litigation, which settlement was approved by the district court in a final judgment entered on March 4, 1992. Id. The settlement agreement provided for the transfer of property by TGM and

2

the Blodgetts to the FTC as receiver to create two different "entities": one called the "Settlement Estate," the proceeds of which would be used to pay the claims of the fraud victims; and the second, called the "Litigation Estate," which was to fund the legal expenses (including the anticipated criminal defense fees) for Mr. and Mrs. Blodgett. (App. at 1-42.) The "Litigation Estate" was funded with $300,000. The settlement agreement as approved by the final judgment in the FTC case provided that any excess funds advanced from the Litigation Estate were to be returned to that Estate to be subsequently distributed by the FTC receiver at the direction of Mr. Blodgett. (App. at 18-19.)

When Stoebner was appointed Trustee of the debtor, TGM, he immediately applied to the district court and received an order requiring the FTC receiver to turn over to him all of the assets in the "Settlement Estate" on the ground that the assets were rightfully the property of the bankruptcy estate. (App. at 42-47.) The turnover order, dated August 21, 1992, made no mention of the "Litigation Estate" because by that time its funds had been disbursed by advances of $250,000 to the law firm of Meshbesher & Spence (Meshbesher) which was representing TGM and Mr. Blodgett, and $50,000 to attorney Douglas Kelly who represented Mrs. Blodgett. (App. at 63.) The FTC receiver held no "Litigation Estate" monies. Mrs. Blodgett terminated her employment of Mr. Kelly and hired Philip Resnick as her counsel. She then terminated Mr. Resnick's employment and hired the present appellee, Parry Murray. At the time of his termination, Mr. Resnick had some $25,649.71 of the original $50,000 litigation fund money in his control, having received it as a retainer from Mrs. Blodgett's prior counsel, Mr. Kelly. Mr. Resnick applied to the district court for directions as to whom he should deliver the money. The district court ordered him to pay it back to the FTC receiver for disbursement according to the final judgment approved FTC settlement agreement. (App. at 48.) Parry Murray, concerned that a return of the $25,649.71 to the FTC receiver would result in it then being turned over to the Bankruptcy Trustee, Stoebner, pursuant to the previously issued turnover order, asked the court on behalf of Diane Blodgett to reconsider its order directing Resnick to pay the money to the

FTC receiver. (App. 49-50.) Indeed, in a response to the motion, Stoebner did file a memorandum with the district court arguing that any Litigation Estate monies in the possession of the FTC receiver should be turned over to him as Bankruptcy Trustee pursuant to the existing turnover order. (App. at 51-61.) In its June 15, 1993, order, the district court (then Chief Judge Diana E. Murphy) denied Parry Murray's motion for reconsideration and also rejected Stoebner's turn over argument noting that turning over the litigation funds would undermine the final judgment entered in the previous FTC action (App. at 64-65), which had established the two "estates" and which had specifically provided that the "Litigation Estate" would be used to pay attorney's fees which were still owed and being incurred. In crucial recitations, then Chief Judge Murphy stated that during the earlier turnover proceeding in 1992 (when Stoebner successfully sought the proceeds of the "Settlement Estate" then in the hands of the FTC receiver) Stoebner had agreed to abide by the terms of the final judgment entered in the FTC case. (App. at 63, 64.) Accordingly, Resnick transferred the $25,649.71 to the FTC receiver, who, pursuant to Mr. Blodgett's directions and in conformity with the terms of the settlement agreement's final judgment in the FTC case, then transferred the funds to Parry Murray to fund Mrs. Blodgett's defense costs. Stoebner then filed the instant adversary action against Parry Murray seeking to recover the $25,649.71.

After the district court rejected Stoebner's argument to turn over the $25,649.71 of litigation fund money, finding that Stoebner had previously represented to the court at the time he obtained the turnover order that he would abide by the terms of the final judgment in the FTC case, Stoebner asked the district court to correct or delete the recitations that he had previously agreed to abide by the final FTC judgment. (App. at 66-73.) The district court refused to change its order to remove the statement and representation it found Mr. Stoebner had made. (App. at 74-76.)

In a parallel proceeding, Trustee Stoebner was also suing to recover the $250,000 which had been advanced out of the Litigation Estate to Meshbesher &

Spence, the law firm which represented TGM and Mr. Blodgett. His lawsuit against Meshbesher was also based, as is the one at bar, on 11 U.S.C. § 549(a), which generally prohibits unauthorized transfers of bankruptcy estate property after the bankruptcy petition is filed. The district court granted judgment to the law firm, and Stoebner appealed. Our court affirmed in an unpublished opinion, and held that Stoebner was judicially estopped from seeking the $250,000 because of the representation he had made to then Chief Judge Murphy during the initial turnover proceeding that he would abide by the terms of the final judgment in the FTC case. See Stoebner v. Meshbesher & Spence, 72 F.3d 134 (table), 1995 WL 723560 (8th Cir. 1995) ("The $250,000 payment was made under the final judgment in the FTC action, however, and Stoebner agreed to follow the terms of that judgment. Having given his word that he would follow the judgment's terms, Stoebner cannot now undermine the judgment by recovering the $250,000 payment.")

When this case was before us the first time, the issue was whether or not Stoebner was collaterally estopped from making the claim. See Stoebner I, 91 F.3d at 1094 ("Nonetheless we conclude the Bankruptcy Court incorrectly determined that collateral estoppel barred Stoebner's section 549 claim.") Parry Murray had not yet pled judicial estoppel as a defense, the bankruptcy judge had not granted summary judgment to Parry Murray on a judicial estoppel basis, and judicial estoppel was just not raised in the first appeal. We asked the parties prior to hearing the first appeal to comment on the effect of Meshbesher, and both of them were emphatic that because judicial estoppel had not been raised as a defense by Parry Murray below, it was not involved in this appeal. See Letter Br. of Appellant filed Feb. 9, 1996, in No. 95-2662 ("In the present case, . . . unlike Meshbesher, Appellee [Parry Murray] never raised the issue of purported judicial estoppel, not by affirmative defense, not in its summary judgment motion, and not in its briefs to this court.") (App. at 107.) Accord, Appellee's Supp. Br. filed Feb. 9, 1996 in No. 95-2662 ("Thus to the extent that the basis for the Meshbesher Decision [sic] (judicial estoppel) differs from the basis of the lower court's decision in this case (collateral estoppel), that decision should have little

5

or no impact upon this appeal . . . .") (App. at 103-04.) At the first oral argument we pressed the question of why Meshbesher didn't control the appeal, and we were told by both sides that judicial estoppel had not been raised in this case, and we so noted in our opinion. See Stoebner I, 91 F.3d at 1093 n.7 ("Neither Stoebner nor Parry, Murray raise any claim of judicial estoppel in this action, and, at oral argument, both parties agreed the doctrine is not implicated in this case.")

When the case at bar was remanded to the bankruptcy court following the first appeal, Parry Murray applied for and received authority to amend its answer to assert the defense of judicial estoppel against Stoebner's claim, ala Meshbesher, which had been decided while this case was awaiting oral argument before us the first time. No claim is made that the bankruptcy court erred in permitting the amendment. Relying on the same rationale as our Meshbesher decision, the bankruptcy court found that Stoebner was judicially estopped from asserting a claim against Parry Murray for the $25,649.71. (App. at 148.) The district court affirmed, and Stoebner filed the instant appeal. We affirm.

In our first opinion, we held that Stoebner was not collaterally estopped in this case by the district court's order of June 15, 1993, denying reconsideration of her order authorizing Mr. Resnick to transfer the $25,649.71 unexpended Litigation Estate funds to the FTC receiver for further distribution according to the final judgment in the FTC case. Stoebner I, 91 F.3d at 1094. We did so because we concluded that the reconsideration order did not meet the four requirements for collateral estoppel to operate in that the order did not determine the "crucial factual issue" of "whether the money in the Litigation Estate came from the debtor." Id.

The issue now before us is whether or not Stoebner is judicially estopped from asserting the present claim in the same way he was judicially estopped in the Meshbesher case. While Stoebner stoutly maintains he did not make the representations to then Chief Judge Murphy that both Chief Judge Murphy and the

6

panel which decided <u>Meshbesher</u> determined he did, we conclude that it is too late in the day to renew the argument. Stoebner took no appeal from the denial of the June 15, 1993, order on reconsideration, and the <u>Meshbesher</u> panel has held that his agreement to abide by the terms of the final judgment approving the settlement of the FTC litigation judicially estopped him from pursuing the Litigation Estate funds which were paid to Meshbesher & Spence. There is no contention made here that the transfer of the $25,649.71 at issue in this litigation from the FTC receiver to Parry Murray was done in violation of or contrary to the terms of the final judgment in the FTC case. In our view, <u>Meshbesher</u> controls the result in this case, and we conclude that Mr. Stoebner is judicially estopped here from asserting any claim to the $25,649.71 in Litigation Estate monies paid to Parry Murray for the very same reason he was judicially estopped from asserting any claim to the $250,000 in Litigation Estate monies paid to Meshbesher & Spence in the <u>Meshbesher</u> case.

Accordingly, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT

7