# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

_____

Nos. 07-6060 / 07-6061 / 08-6001
_____

| | | |
|---|---|---|
| In re: T.G. Morgan, Inc. | * | |
| | * | |
| Debtor | * | |
| | * | |
| Diane S. Blodgett; Edward Clement; | * | Appeal from the United States |
| Audrey Florence; Tom Lingenfelter, | * | Bankruptcy Court for the |
| | * | District of Minnesota |
| Objectors - Appellants, | * | |
| | * | |
| v. | * | |
| | * | |
| John R. Stoebner, | * | |
| | * | |
| Trustee - Appellee | * | |

_____

Submitted: August 26, 2008
Filed: October 1, 2008
_____

Before FEDERMAN, MAHONEY and VENTERS, Bankruptcy Judges

FEDERMAN, Bankruptcy Judge

Diane S. Blodgett, Edward Clement, Audrey Florence, and Tom Lingenfelter (the "Objectors") appeal from the Bankruptcy Court's[1] denial of their objections to the Chapter 7 Trustee's Final Report (the "Objections"), as well as the denial of their Rule

---

[1] The Honorable Robert J. Kressel, Bankruptcy Judge, United States Bankruptcy Court for the District of Minnesota.

60(b) Motion relating to the Order denying the Objections.[2]  The Objectors also seek permission to file a reply brief out of time.  That request is GRANTED.  For the reasons that follow, we AFFIRM.

## FACTUAL BACKGROUND

This case began seventeen years ago, in August 1991, when the Federal Trade Commission sued T.G. Morgan Inc., a rare coin investment group, and its principal, Michael Blodgett, in the United States District Court for the District of Minnesota, for deceptive acts or practices in violation of federal law (the "FTC Action"). In December 1991, the parties to the FTC Action stipulated to the appointment of a receiver and entered into a settlement agreement whereby T.G. Morgan, Michael Blodgett, and his then-wife, Diane Blodgett (one of the Objectors here), agreed to transfer certain assets to the FTC receiver "irrevocably and without the possibility of reversion to themselves or to any entity owned or controlled by them."  Those assets were divided into two parts: (1) a "settlement estate" intended to compensate the victimized coin buyers and (2) a "litigation estate" intended to pay Michael and Diane Blodgett's legal fees.  The settlement further provided that, under certain circumstances, if one of T.G. Morgan's customers could demonstrate that a specific coin or other asset recovered by the receiver belonged to that customer, then the receiver was to return the coin to that customer and not include it in the settlement estate for distribution to victims generally.

About a month later, on January 24, 1992, several of T.G. Morgan's creditors filed an involuntary bankruptcy petition against it.  T.G. Morgan consented to relief,

---

[2] This is a consolidated appeal from (i) a September 5, 2007 Order overruling the Objections to the Chapter 7 Trustee's Final Report and (ii) a January 3, 2008 Order denying the Objectors' Motion for Reconsideration of a December 14, 2007 Memorandum Opinion and Order denying the Objectors' Rule 60(b) motion for relief from the September 5 Order.

and converted its case to Chapter 11 on March 12, 1992. The Bankruptcy Court converted the case back to Chapter 7 on May 28, 1992, and John Stoebner, the Appellee here, was appointed Trustee. Meanwhile, by Order entered March 5, 1992, the District Court approved the settlement in the FTC Action.

On August 24, 1992, the District Court ordered that the assets of the T.G. Morgan settlement estate be turned over to the bankruptcy estate and ruled that the bankruptcy court would preside over any claims against those assets.[3] On September 25, 1992, the FTC filed an unsecured Proof of Claim in T.G. Morgan's bankruptcy case for $38,046,524 based on the March 5, 1992 Judgment.

Over the next fifteen years, the Objectors and others (particularly Michael and Diane Blodgett) were highly prolific in litigation involving T.G. Morgan and the Trustee – in the Bankruptcy Court, the Minnesota District Court, and the Eighth Circuit – to the point where several of them were admonished and enjoined from prosecuting any action against the Trustee and others without an attorney or prior written authorization from a judicial officer of the District Court of Minnesota.[4] The Bankruptcy Court's December 14, 2007 Memorandum Opinion and Order denying the Objectors' Rule 60(b) motion sets out much of that litigation in some detail and we need not repeat that history here.

---

[3] Apparently, the August 24, 1992 turnover order made no mention of the "litigation estate" because those funds had already been disbursed to law firms representing T.G. Morgan and the Blodgetts, and so the FTC receiver had no litigation estate funds to turn over to the bankruptcy trustee. *See In re T.G. Morgan, Inc.*, 172 F.3d 607, 608 (8th Cir. 1999) (finding that the Trustee was judicially estopped from seeking turnover of any of the funds from the litigation estate because the Trustee had previously said he would agree to be bound by the terms of the FTC Action settlement).

[4] Michael Blodgett, Diane Blodgett, Tom Lingenfelter, Phil Florence (whose estate is now represented by Objector Audrey Florence), and T.G. Morgan were all prohibited from filing such further lawsuits.

On October 26, 1999, the Trustee filed and sent notice of his interim final report and account before distribution. No objections were filed and the Bankruptcy Court approved it on November 18, 1999. The Trustee distributed a significant amount of the estate's assets in accordance with that report.

On July 23, 2007, the Trustee submitted a 110-page Final Report and Proposed Distribution. The Final Report sought to distribute the funds remaining in the estate to unsecured creditors and to pay administrative fees, including trustee and attorneys' fees. The Trustee also sought approval of compensation. Notice went to all creditors, and objections were due August 15, 2007. It is this Final Report to which the Objectors objected, and is the subject of this appeal. The Objectors did not object to any part of the Trustee's actual final account, nor did they point to any errors in it. Rather, they essentially asserted that the Trustee had breached his fiduciary duties throughout the entire bankruptcy case, and that he had perpetrated fraud on the court. The Objectors also objected to the proposed distribution of professional fees on that basis, but they did not contend that any of the fees were unreasonable.[5]

On August 27, 2007, the Trustee filed a response to and notice of hearing on the Objections. He asserted that the Objections had nothing to do with the Final Report, but merely repeated frivolous and unfounded claims that had been rejected by the courts on numerous occasions in the prior litigation. The Trustee's response noticed a hearing on the Objections which was set for September 5, 2007. However, only the Trustee appeared at that hearing. As discussed below, the Objectors' attorneys say they did not receive notice of the hearing. That same day, September 5, the Bankruptcy Court entered orders overruling the Objections, approving the Final

---

[5] Two such Objections were filed: the first by Diane Blodgett, and the second by Clement, Florence, and Lingenfelter, jointly. Although the two Objections differed in their descriptions of respective property interests alleged to have been wrongfully seized by the Trustee, they essentially argued the same bases for the Trustee's alleged wrongdoings.

Report, and granting the applications for compensation. The Objectors timely appealed the September 5 Order overruling their Objections and approving the Final Report.

In addition, over the next several days, the Objectors' attorneys wrote letters to the Trustee and to the Bankruptcy Court stating that they had not received notice of the September 5 hearing. They accused the Trustee of various wrongdoings, and suggested that the Bankruptcy Court had failed to follow proper procedures and violated the Objectors' due process rights. However, they did not file a motion for reconsideration or rehearing, nor did they seek a stay of the September 5 Order.

By letter dated September 27, the Trustee advised the Objectors' attorneys that, because they had not sought a stay of the September 5 Order pending appeal, he intended to make the final disbursement on October 4. On October 4, the Objectors filed a "Rule 9014 Objections and Notice of Lack of Service and Opportunity to be Heard" in the Bankruptcy Court, in which they, *inter alia*, accused the Trustee of "massive fraud" and accused the Bankruptcy Court of abrogating its jurisdiction to the Trustee. On November 9, 2007, the Objectors filed their Rule 60(b) motion seeking relief from the September 5 Order.

At that point, we remanded the pending appeal of the September 5 Order approving the Final Report to the Bankruptcy Court for the limited purpose of having it rule on the Rule 60(b) motion that was then pending there. Following a hearing, the Bankruptcy Court entered the December 14 Memorandum Opinion and Order denying the Rule 60(b) motion. The Objectors moved for reconsideration, which the Bankruptcy Court denied on January 3, 2008. The Objectors appealed the January 3 Order denying reconsideration, and we consolidated that appeal with the appeal from the September 5 Order.

## STANDARD OF REVIEW

We review findings of fact for clear error, and legal conclusions *de novo.*[6]

## STANDING

In its January 3, 2008 Order denying reconsideration, the Bankruptcy Court questioned whether the Objectors had standing to pursue the Objections because none of them holds an allowed claim in the case and, thus, would not benefit from modifications to the Trustee's final account or from a reduction or elimination of awards of compensation. We agree with the Bankruptcy Court that the Objectors lacked standing to object to the Final Report and requests for compensation. It follows that they likewise lack standing to pursue this appeal.

Standing to prosecute an appeal is a jurisdictional issue.[7] "The question of standing generally challenges whether a party is the proper one to request an adjudication of a particular issue."[8] In order to have standing to appeal from an order of the bankruptcy court, the "person aggrieved test" requires that the appellant must have been directly and adversely affected pecuniarily by the Order.[9] In other words,

---

[6] *First Nat'l Bank of Olathe v. Pontow (In re Pontow),* 111 F.3d 604, 609 (8th Cir. 1997); *Sholdan v. Dietz (In re Sholdan),* 108 F.3d 886, 888 (8th Cir. 1997); Fed. R. Bankr. P. 8013.

[7] *In re Nangle*, 288 B.R. 213, 215 (B.A.P. 8th Cir. 2003).

[8] *Id*. at 216.

[9] *Id.*; *In re Stinnett*, 465 F.3d 309, 315 (7th Cir. 2006) ("Only those persons affected pecuniarily by a bankruptcy court order have standing to appeal that order.") (citation omitted).

standing is limited to "persons with a financial stake in the bankruptcy court's order."[10]

Counsel for the Objectors conceded at oral argument that none of the Objectors holds an allowed claim in the Debtor's bankruptcy case. That being the case, they had no financial stake in the Bankruptcy Court's approval of the Final Report and, thus, had no standing to object to it or appeal from the order approving it. As a result, the Bankruptcy Court did not err in overruling their Objections to it, or in denying their subsequent requests for relief.

## RES JUDICATA AND COLLATERAL ESTOPPEL

The Bankruptcy Court also determined that the Objectors' claims here are all barred by the doctrines of res judicata and collateral estoppel. The doctrine of res judicata bars relitigation of a claim if: (1) the prior judgment was rendered by a court of competent jurisdiction; (2) the prior judgment was a final judgment on the merits; and (3) the same cause of action and the same parties or their privies were involved in both cases.[11] "Whether a cause of action is the same for res judicata purposes depends on the facts presented, not the legal violations alleged."[12] In addition, res judicata applies to any grounds that actually were or could have been raised in the prior action.[13] Collateral estoppel, also known as "issue preclusion," provides that

---

[10] *Nangle*, 288 B.R. at 216.

[11] *Lundquist v. Rice Memorial Hosp.*, 238 F.3d 975, 977 (8th Cir. 2001).

[12] *Lingenfelter v. Stoebner*, 2005 WL 1225950 at *5 (D. Minn. May 23, 2005) (citation omitted).

[13] *Id.* (citation omitted).

7

when an issue of ultimate fact has been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in another lawsuit.[14]

The Objectors' complaints, including those relating to the Trustee's fees,[15] go to the Trustee's taking possession of and distributing various assets which they have contended in other litigation were owned by them. They also contend that the Trustee breached fiduciary duties in pursuing avoidance actions against them. The Bankruptcy Court found that every one of these issues had been raised and decided in previous litigation, with some of the claims having been decided more than once. We agree.[16]

---

[14] *Anderberg-Lund Printing* Co., 109 F.3d 1343, 1346 (8th Cir. 1997). *See also Chavez v. Weber*, 497 F.3d 796, 803 (8th Cir. 2007).

[15] As mentioned above, the Objections relating to the Trustee's fees are based not on reasonableness, but are based solely on the same allegations of breach of fiduciary duty as the other allegations. Consequently, the principles of res judicata and collateral estoppel apply to them as well.

[16] For example, in *Lingenfelter v. Stoebner*, 2005 WL 1225950 (D. Minn. May 23, 2005), the Minnesota District Court referred to this litigation as having an "apparently endless history . . . well known to the Courts of the Eighth Circuit and the District of Minnesota." It held that it was "more than abundantly clear" that the issues raised in that litigation were precisely the same causes of action as Objector Blodgett, Lingenfelter, and Florence had raised in earlier lawsuits because all of the claims arose "from a common nucleus of operative fact – the Trustee's inclusion of certain assets in the TGM bankruptcy estate." As a result, the District Court held that the claims were all barred by res judicata or collateral estoppel. In fact, the District Court barred these Objectors from filing further lawsuits without an attorney or Court permission. The Eighth Circuit affirmed that decision. 188 Fed. Appx. 554 (8th Cir. 2006) (not selected for publication). As to Clement, the Trustee initiated an adversary proceeding against William A. Clement (whose estate is represented here by Objector Edward Clement) to recover a $50,000 preferential payment. Clement counterclaimed against the Trustee, asserting that the Trustee had wrongfully taken possession of his property, but Clement then dismissed his counterclaim with prejudice, admitting that the counterclaim lacked factual support. *Stoebner v. Clement* (*In re T.G. Morgan, Inc.*), Ch. 7 Case No. 4-92-0578, Adv. No. 4-93-461, Stipulation re: Dismissal of Defendant's Counterclaims with Prejudice (Bankr. D.

That being the case, and as the Bankruptcy Court pointed out, the Objections really have nothing to do with the Final Report or requests for compensation as such. Rather, the Objectors are essentially using the Final Report as one more opportunity to complain about the Trustee's alleged breach of fiduciary duties in administering assets the Objectors assert belong to them. Although the final report in a case may present one last opportunity for a bankruptcy court to review a trustee's handling of an estate,[17] the final report is not typically the time to raise issues such as the ones being brought by the Objectors here. If the Objectors believed that the Trustee was administering assets belonging to them pursuant to the settlement in the FTC Action, they had ample opportunity to raise those issues before now, and that would have been the time in which to do so. Indeed, as discussed above, each of these Objectors did raise those issues on numerous previous occasions.

Counsel for the Objectors pointed out at oral argument that the Objectors previously brought some of these claims while they were acting *pro se*, suggesting that some of the issues may not have been initially argued as effectively as they could have been. But that does not affect the finality of the judgments rendered. The Bankruptcy Court correctly concluded that their claims have all been previously decided and are, therefore, barred.

---

Minn. June 6, 1994). *See also, e.g., Stoebner v. Lingenfelter*, 115 F.3d 576 (8th Cir. 1997) (affirming a jury verdict finding that Lingenfelter had received fraudulent transfers from T.G. Morgan in violation of 11 U.S.C. §§ 544 and 548); *Blodgett v. Stoebner*, Ch. 7 Case No. 4-92-0578, Adv. No. 4-93-477, Findings of Fact, Conclusions of Law, and Order for Judgment and Judgment (Bankr. D. Minn. Jan. 25, 1995) (entering judgment in favor of the Trustee and against Diane S. Blodgett in the amount of $1,884,900 for fraudulent transfers, and dismissing her claims against the Trustee).

[17] *See Lopez-Stubbe v. Rodriguez-Estrada* (*In re San Juan Hotel Corp.*), 847 F.2d 931, 939 (1st Cir. 1988) (noting that the purpose of a final report and accounting is to insure that trustees disclose and be held accountable for their handling of the estate and that, only after having filed the report can they be absolved of liability).

ADEQUACY OF NOTICE

The Objectors next argue that they did not receive adequate notice of the hearing on their Objections. However, in view of the fact that they lacked standing to object to the Final Report, they were not entitled to notice in the first place.

Even if they were entitled to notice, we cannot say that the Bankruptcy Court erred in finding that the notice was proper under the circumstances. In connection with these Objections, attorneys John Tancabel and C. Peter Erlinder represented Diane Blodgett. Tancabel and attorney Lawrence W. Otter represented Clement, Florence, and Lingenfelter. Apparently, neither Erlinder nor Otter is licensed to practice in the Minnesota District or Bankruptcy Courts. Consequently, Tancabel petitioned for their *pro hac vice* admission. As part of those petitions, Tancabel pledged to accept service of all papers served in the case, and Erlinder and Otter acknowledged that Tancabel was required to accept service of all papers served.

There appears to be no dispute that attorneys Erlinder and Otter did not get notice, in any form, of the September 5 hearing, but that was in conformance with the attorneys' acknowledgments in the petitions for *pro hac vice* admission that Tancabel was to receive notice on their behalf. Electronic notice went to attorneys and parties who had registered under the local rules for electronic service under the court's CM/ECF system. Because Tancabel was not registered for electronic service, the Trustee served the Notice to Tancabel by first class mail, as evidenced by an Unsworn Certificate of Service by the Trustee's paralegal, Lori A. Frey, attached to the Notice.

The filing of the Objections made the matter a contested matter under Federal Rule of Bankruptcy Procedure 9014. Under that rule, any paper served after the motion shall be served in the manner provided by Federal Rule of Civil Procedure

5(b).[18]  Rule 5(b)(2)(C) allows for service by mail, which is complete upon mailing, not receipt.[19]  Ms. Frey's Certificate of Service shows that it was mailed to Tancabel's correct address, which is the same address where Tancabel received the copy of the September 5 Order and other papers in the case.  However, Tancabel and his assistant filed sworn affidavits insisting that they never received the notice of the hearing.

The Bankruptcy Court expressly stated, both in the December 14, 2007 Memorandum Opinion and the January 3, 2008 Order, that it did not believe Tancabel and his assistant's statements that they did not receive the Notice.  In sum, the Bankruptcy Court found Ms. Frey's statement that she did mail the Notice more credible than Tancabel's denial that he received it.  Keeping in mind that credibility determinations are virtually unreviewable on appeal,[20] we cannot say that the Bankruptcy Court erred in concluding that Tancabel did not overcome the presumption that he received the Notice of the hearing.

Moreover, Rule 9014 only requires "reasonable notice and opportunity for hearing" which means "after such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances."[21]  Due process only requires that notice be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections –  it does not require that

---

[18]  Fed. R. Bankr. P. 9014(b).

[19]  Fed. R. Civ. P. 5(b)(2)(C).

[20]  *See Landscape Properties, Inc. v. Whisenhunt*, 127 F.3d 678, 684 (8th Cir. 1997) (citing *United States v. McCarthy*, 97 F.3d 1562, 1579 (8th Cir. 1996)) (additional citations omitted).

[21]  11 U.S.C. § 102(1)(A).

an interested party actually receive notice.[22]  The Objectors had a full twenty days after the Final Report in which to object, and the notice of hearing went out on August 27, which was nine days before the September 5 hearing, enough time for it to arrive at Tancabel's office before the hearing.  Tancabel has not demonstrated that the notice given was not appropriate under the circumstances.

Moreover, even assuming that the notice and hearing were not appropriate under the circumstances, "[t]he issue then becomes whether the error was harmless, based on the facts of the case."[23]  In view of the fact that the Objectors lacked standing to object, and that the Objections were all barred by res judicata and collateral estoppel, any defect in the notice was harmless.

## CONCLUSION

In sum, we conclude that the Bankruptcy Court did not err in overruling the Objections to the Final Report or in denying the Objectors' Rule 60(b) motion.  The Bankruptcy Court's Orders are, therefore, AFFIRMED.

───────────────

[22]  *Baldwin v. Credit Based Asset Servicing and Securitization*, 516 F.3d 734, 737 (8th Cir. 2008).

[23] *Id*. at 738.